IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HEINZ KETTLER GMBH & CO., KG and )
KETTLER INTERNATIONAL, INC., )
    Plaintiffs, )
)
v. ) Case No. 1:10cv708
)
RAZOR USA, LLC, )
    Defendant. )

## MEMORANDUM OPINION

This patent infringement suit was brought by the foreign owner of the patents in suit and its affiliated Virginia distributor. Defendant seeks first the threshold dismissal of the Virginia distributor for lack of standing, and then a transfer of venue pursuant to 28 U.S.C. § 1404(a) given the dismissal of the Virginia plaintiff. To remedy the standing deficiency, plaintiffs then, without leave of court, filed an amended complaint alleging that subsequent to the filing of the complaint, the foreign owner of the patents in suit transferred ownership of the patents to its affiliated Virginia distributor. Defendant counters that the amended complaint is in fact a supplemental complaint, which may not be filed without leave of court and that leave to do so should be denied as futile given that the Virginia distributor did not have standing when the original complaint was filed and a post-suit assignment cannot retroactively confer standing.

For the reasons stated from the Bench, and elucidated here, the motion to file the supplemental complaint is not futile and is appropriately granted as settled Federal Circuit precedent makes clear that where, as here, an original plaintiff has standing, that plaintiff may assign the patents in suit during the course of the litigation and the assignee then has standing to maintain the action. And because the transfer calculus weighs decisively against transfer, the motion to transfer must be denied.

# I.

Plaintiff, Heinz Kettler GMBH & Co., KG ("Heinz Kettler"), is a German corporation that manufactures children's ride-on vehicles, including various models of bicycles, tricycles, and scooters. Plaintiff, Kettler International, Inc., ("Kettler International"), is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. Kettler International is the exclusive distributor of Heinz Kettler's products in the United States. Defendant, Razor USA, LLC ("Razor"), is a Delaware limited liability company with its principal place of business in Cerritos, California. Razor also manufactures children's ride-on toys.

On June 24, 2010, Heinz Kettler and Kettler International initiated the instant action by filing a complaint against Razor, alleging a single count of patent infringement. Specifically, the complaint alleges that Heinz Kettler is the sole owner of a group of patents that prevent children from over-steering ride-on vehicles. Comp. ¶¶ 11-12. According to the complaint, Razor unlawfully incorporated Heinz Kettler's patented technology into one or more of its tricycle models sold in the United States. *Id.* ¶ 13. Importantly, the complaint states that Kettler International is "Heinz Kettler's exclusive United States distributor of Kettler products." *Id.* ¶ 9.

On August 27, 2010, Razor filed a motion to dismiss Kettler International for lack of standing, contending that Kettler International lacked standing to sue for patent infringement because it was only the exclusive distributor of the patents in suit, and not an owner or exclusive licensee. On the same date, Razor also filed a motion to transfer venue, pursuant to 28 U.S.C. § 1404(a). According to Razor, once Kettler International is dismissed from the action, the interests of justice favor transferring the lawsuit to the Central District of California.

On September 9, 2010, plaintiffs responded to the motion to dismiss by filing, purportedly as a matter of right, an amended complaint, pursuant to Rule 15(a)(1)(B), Fed. R.

Civ. P. The amended complaint drops Heinz Kettler as a plaintiff and alleges that Kettler International is the sole owner, by assignment, of the patents in suit. Specifically, the amended complaint alleges as follows:

> By virtue of assignment, [Kettler International] is presently the sole owner of the '988 patent, '884 patent, the '772 patent, and the '408 patent. [Kettler International], by virtue of assignment, is presently the sole and exclusive holder of the patents-in-suit, and has exclusive rights to import, distribution [sic], marketing [sic], offer for sale and sell in the United States of [sic] any commercial embodiment of the patents-in-suit. Also by virtue of assignment, [Kettler International] is vested with the exclusive right to enforce, defend and prosecute the patents-in-suit in the United States.

First Amended Comp. ¶ 9. In conjunction with their amended complaint, plaintiffs filed a response to Razor's motion to dismiss, arguing that the motion to dismiss is moot because Kettler International is now the owner of the patents in suit.

On September 15, 2010, Razor filed a reply in support of its motion to dismiss, arguing that plaintiffs' "amended complaint" is actually a "supplemental complaint" because it sets forth a transaction or occurrence (*i.e.*, the post-suit assignment) that occurred after the filing of the original complaint. Pursuant to Rule 15(d), a party may file a supplemental pleading only by leave of court. Razor argues that because Kettler International failed to comply with this requirement, the so-called "amended complaint" should be stricken as improper supplementation.[1] Further, Razor argues that even if Kettler International were allowed to file the supplemental complaint, Kettler International should still be dismissed for lack of standing because Kettler International did not have standing to sue for patent infringement at the time the initial complaint was filed and a post-filing assignment of patent rights does not retroactively confer standing.

---

[1] Razor submitted a separate motion to strike the amended complaint.

On September 17, 2010, plaintiffs filed a motion requesting: (i) leave to drop Heinz Kettler as a party plaintiff; and (ii) permission to supplement the allegations in the original complaint to include the fact that Kettler International is, by virtue of assignment dated September 1, 2010, the sole and exclusive owner of the patents at issue in this lawsuit.[2] Plaintiffs counter that the motion to file a supplemental complaint should be granted because it is neither futile nor unfairly prejudicial; instead, the supplemental complaint serves to remedy Kettler International's lack of standing and provides an economical and expeditious means of reaching the merits of the case.

## II.

The four motions at issue are: (1) defendant's motion to dismiss for lack of standing; (2) defendant's motion to transfer, pursuant to 28 U.S.C. § 1404(a); (3) defendant's motion to strike the amended complaint as improper supplementation; and (4) plaintiffs' motion to file a supplemental complaint. Each motion is separately addressed.

### A. Motion to Dismiss

The crux of the motion to dismiss is Razor's contention that Kettler International, as the exclusive distributor of Heinz Kettler's products, lacks standing to sue for patent infringement. Razor is correct that Kettler International does not have standing to sue based solely upon the allegation in the original complaint that Kettler International is "Heinz Kettler's exclusive United States distributor of Kettler products." Under well-settled Federal Circuit law, to have standing to sue for patent infringement, a licensee must hold some of the proprietary rights under the patent—*i.e.*, exclusive rights to make, use, or sell the patent. *See Ortho Pharm. Corp. v.*

---

[2] Heinz Kettler assigned all of its rights in the patents-in-issue to Kettler International on September 1, 2010. Busche Decl. ¶ 6. The assignment expressly provides Kettler International with the right to sue for past infringement. *Id.* This assignment was filed with the United States Patent and Trademark Office on September 15, 2010. Pike Decl. ¶ 2.

*Genetics Inst.*, 52 F.3d 1026, 1031-32 (Fed. Cir. 1995). Here, the original complaint alleges only that Kettler International has the exclusive right to sell Kettler's products in the United States; it does not allege, as it must, that Kettler International has the exclusive right to sell *all* products incorporating the patents in suit. *See Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1291 (Fed. Cir. 2007) (holding that an exclusive distributor did not have standing to sue for patent infringement because it did not have the exclusive right to sell all products made according to the disputed patent). Indeed, plaintiffs cannot allege that Kettler International has the exclusive right to sell all products incorporating the patents in suit in the United States because it appears from the evidence in the record that Heinz Kettler granted a license to at least one other company. *See* Buchner Decl., Ex. A at 2.

But the fact that Kettler International does not have standing to sue for patent infringement based on its status as an exclusive distributor does not finally resolve the standing issue. Under Federal Circuit law, an assignee has standing to sue for patent infringement in its own name. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006). The only potential limitation on an assignee's standing is that an assignee may not sue for damages for infringing activity that occurred prior to the assignment unless the assignment expressly grants that right. *See Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1579 n.7 (Fed. Cir. 1991). Here, the supplemental complaint alleges that Heinz Kettler assigned its patent rights to Kettler International after the initial complaint was filed, and that the assignment expressly grants Kettler International the right to sue for past infringement. Thus, whether Kettler International should be dismissed for lack of standing depends on whether Kettler International is granted leave to file its supplemental complaint.

## B. Motion to Strike

Razor argues that the amended complaint filed on September 9, 2010 should be stricken because the "amended complaint" is actually a "supplemental complaint" and Kettler International did not request permission to file its supplemental complaint pursuant to Fed. R. Civ. P. 15(d). Razor's motion to strike is now moot because Kettler International filed a motion requesting leave to file a supplemental complaint on September 17, 2010.

## C. Motion to Supplement

Plaintiffs have filed a motion requesting permission to supplement their original complaint to include the fact that Kettler International is currently the owner, by assignment, of the patents in suit. Supplemental pleadings are governed by Rule 15(d) of the Federal Rules of Civil Procedure. The rule states as follows:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.

Fed. R. Civ. P. 15(d). Supplemental pleadings are "[s]o useful . . . and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963). Recently, the Fourth Circuit clarified that the standard for granting leave to supplement a pleading is "nearly identical" to the standard governing whether to grant a motion to amend. *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). Thus, a motion to supplement a pleading "should be denied only where 'good reason exists . . . such as prejudice to the defendants.'" *Id.* (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)).

Here, Razor is correct to refrain from arguing that granting plaintiffs leave to file a supplemental complaint will cause prejudice. The supplemental complaint does not add new claims, nor does it change the nature of the single claim being asserted against Razor. Indeed, the supplemental complaint alleges precisely the same claim for patent infringement that was alleged in the original complaint. The supplemental complaint's only effect is to replace one plaintiff, Heinz Kettler, with a different plaintiff, Kettler International, at an early stage in the litigation process. Making this change does not require Razor to expend substantial, if any, resources for additional discovery, and it does not otherwise undercut Razor's ability to prepare an appropriate defense to the patent infringement claim.

Instead of arguing prejudice, Razor contends that the supplemental complaint is futile because Kettler International did not have standing when the original complaint was filed, and a post-suit assignment does not retroactively confer standing. Razor is correct that Federal Circuit authority clearly establishes that standing cannot be conferred retroactively. *See Enzo APA & Son, Inc. v. Geapag AG*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779 (Fed. Cir. 1996). Yet, a careful review of those cases reveals that the subsequent assignee was the only original plaintiff, and the fact that a post-suit assignment could not retroactively confer standing simply meant that no plaintiff had standing when the suit was initially filed. In other words, in those cases, dismissal was warranted not because the subsequent assignee did not have standing when the original suit was filed, but rather dismissal was required *because no original plaintiff had standing*.[3] In this case, by contrast, there is no dispute that one of the original plaintiffs, Heinz Kettler, had standing to sue for patent

---

[3] *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204 (Fed. Cir. 2005) (holding that a patent infringement suit must be dismissed where the original plaintiff lacks Article III standing).

infringement because the original complaint alleges that Heinz Kettler was the sole owner of the patents in issue.[4] Thus, unlike the cases relied upon by Razor, the issue here is not whether the complaint must be dismissed because of an initial standing defect. Instead, the issue presented in this case is whether Kettler International may step into the shoes of Heinz Kettler in order to maintain this patent infringement suit.

This issue is easily resolved because, under well-established Federal Circuit authority, a patent owner may assign patent rights during the course of a patent infringement suit, and the subsequent assignee then has standing to maintain the action. For example, in *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1210-11 (Fed. Cir. 1998), the counterclaim plaintiff, La Gard, Inc. ("La Gard"), asserted a patent infringement claim against Mas-Hamilton Group ("Mas-Hamilton"). After the district court concluded that there was no infringement, La Gard filed an appeal. Subsequent to filing its appeal, La Gard assigned its patent rights to Masco Corp. ("Masco"). Thereafter, Mas-Hamilton filed a motion to dismiss for lack of subject matter jurisdiction. According to Mas-Hamilton, La Gard no longer had standing to sue for patent infringement because it assigned its rights to Masco, and Masco did not have standing because it was not the legal owner of the patent at the time of the alleged infringement. *Id.* at 1210. In denying the motion, the Federal Circuit noted that a proper plaintiff, La Gard, filed both the counterclaim and the appeal. *Id.* at 1210-11. The court further noted that La Gard made a valid assignment of all its patent rights to Masco, including the right to sue for past infringement. *Id.*

---

[4] *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (holding that "[u]nder 35 U.S.C. § 100 . . . 'the owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot.'") (quoting *Calgon Corp. v. Nalco Chem. Co.*, 726 F. Supp. 983, 985 (D. Del. 1989)).

Under these circumstances, the Federal Circuit concluded that Masco did not lack standing on appeal. *Id.*[5]

Here, a plaintiff with Article III standing, Heinz Kettler, filed suit for patent infringement on June 24, 2010. A little over two months later, on September 1, 2010, Heinz Kettler assigned its patent rights to an affiliated company, Kettler International. There is no dispute that the assignment was properly executed, nor is there any dispute that the assignment expressly grants Kettler International the right to sue for past infringement. Thus, under *Mas-Hamilton*, Kettler International has standing to continue prosecuting the patent infringement action originally filed by Heinz Kettler. Accordingly, the supplemental complaint is not futile because the allegations in the supplemental complaint—specifically, the allegations that Heinz Kettler was the sole owner of the patents in suit when the original complaint was filed and that Heinz Kettler assigned its patent rights to Kettler International after filing suit—are sufficient to establish that Kettler International has standing to continue to maintain this patent infringement suit.

## D.      Motion to Transfer

Because Kettler International has standing to maintain the patent infringement suit in the Eastern District of Virginia, the facts and circumstances of this case do not warrant transfer to the Central District of California. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to

---

[5] Similarly, in *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1371-72 (Fed. Cir. 2004), the original plaintiff in the patent infringement action was the owner of the patent at the time the suit was filed. *Id.* at 1371. After filing the suit, the original plaintiff transferred its patent rights, including the right to sue for past infringement, to an affiliated company that was not a party to the action. *Id.* After two years, the assignee filed a motion to join as a party, which the district court granted before judgment. *Id.* at 1371-72. On appeal, the Federal Circuit upheld the district court's joinder decision. *Id.*

any other district or division where it might have been brought."[6] The decision whether to transfer an action under the statute is committed to the sound discretion of the district court. *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 313 F. Supp. 2d 824, 828 (E.D. Va. 2004). In deciding whether to grant a motion to transfer under § 1404(a), a district court typically considers: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007).[7] The party seeking transfer bears the burden of proving "that the circumstances of the case are *strongly* in favor of transfer." *Jones v. Frazier*, No. 1:09cv513, 2009 WL 2601355, at *8 (E.D. Va. Aug. 18, 2009) (emphasis added). Razor has not met this burden.

The first factor in the transfer analysis is the plaintiff's choice of forum. That choice is typically entitled to "substantial weight," especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action. *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003). Here, plaintiffs' choice of forum is entitled to substantial weight because the Eastern District of Virginia is Kettler International's home forum. Kettler International is a Virginia corporation and its principal place of business is located in Virginia Beach. Moreover, all of Kettler International's employees, including the directors and employees with information relevant to the patent infringement suit, are located in Virginia.

Razor argues that Kettler International's home forum should not receive deference because Kettler International is not a proper plaintiff. This argument is unavailing given the

---

[6] In the present action, it is not disputed that this suit could have been brought in the Central District of California because Razor has its principal place of business within that district. *See Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 n.3 (E.D. Va. 2002).

[7] For a summary of all the factors relevant to the § 1404(a) transfer analysis and the cases discussing these factors, see *Questions as to Convenience and Justice of Transfer Under Forum Non Coveniens Provisions of Judicial Code*, 1 A.L.R. Fed. 15.

determination that the post-suit assignment gives Kettler International standing to maintain this patent infringement action. As a proper plaintiff, there is no reason to accord Kettler International's home forum less deference simply because it did not have standing when the suit was originally filed. At present, this action involves a Virginia plaintiff and a California defendant, and the transfer calculus must be assessed on that basis.

The second factor is convenience to the parties, which typically requires courts to consider factors such as the "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process." *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)). At least one court in this district has noted that "[w]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *JTH Tax, Inc.*, 482 F. Supp. 2d at 738. Moreover, transfer is not appropriate where it will only serve to shift the balance of inconvenience from one party to the other. *See Prod. Group. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004).

Here, Razor argues that the Eastern District of Virginia is an inconvenient forum because its offices, employees, and relevant documents are all located in California. However, the Central District of California is an inconvenient forum for Kettler International to pursue its claim because its principal place of business, employees, and relevant documents are located in Virginia. Thus, this factor does not weigh in favor of transfer because it will only serve to shift the balance of inconvenience from Razor to Kettler International.[8]

---

[8] Razor argues that this case should be transferred because the Central District of California is the "preferred forum" to litigate this patent infringement suit. Some courts within this district have stated that "[i]n a patent infringement action, as a general rule, 'the preferred forum is that which is the center of the accused activity.'" *GTE Wireless, Inc v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999); *accord Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001). But the "preferred forum" rule does not apply in this case because

The third factor is the convenience to the witnesses of litigating in either venue. The party asserting witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636. Courts give "greater weight . . . to the potential inconvenience of witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Lycos*, 499 F. Supp. 2d at 693. On the other hand, courts give less weight to the witness convenience factor "when the appearance of witnesses can be secured without the necessity of compulsory process." *Id.*

Kettler International has identified multiple witnesses that it contends will be inconvenienced by transferring this case to the Central District of California. Specifically, Kettler International alleges that two of its employees, both of whom reside in Virginia, have information relevant to this dispute. In addition, Kettler International states that a Heinz Kettler employee, who resides in Germany, also has potentially relevant information. Finally, Kettler International asserts that the attorneys who prepared and prosecuted the relevant patent applications are located in Virginia. The inconvenience to these witnesses is accorded little weight in the transfer analysis because Kettler International has failed to provide specific details regarding how each witness's testimony will be material and non-cumulative. Moreover, Kettler

---

Kettler International filed suit in its home forum. *See General Creation LLC v. Leapfrog Enters., Inc.*, 192 F. Supp. 2d 503, 505 (W.D. Va. 2002) ("The concept of a preferred forum located at the 'center of the accused activity' therefore only applies in those patent infringement cases where the plaintiff files suit in a foreign forum."). Even if the rule does apply, the result would be the same. At least one court in this district has concluded that "the so-called 'center of activity' approach to resolution of venue issues does not supplant the traditional change of venue analysis prescribed by § 1404(a) and the established jurisprudence applying it." *Koh*, 250 F. Supp. 2d at 638. At most, "the center of gravity [sic] approach is best regarded as a shorthand reference to the convenience of witness and access to evidence components of the well-settled precepts for applying § 1404(a)." *Id.* Here, an analysis of the § 1404(a) factors and the case law applying those factors does not weigh in favor of transfer.

International has not shown that compulsory process is necessary to obtain testimony from these witnesses, all of whom are closely identified with Kettler International and will likely travel to the Central District of California if the case is transferred to that jurisdiction.

On the other hand, Razor has identified multiple witnesses that it argues will be inconvenienced by litigating this matter in the Eastern District of Virginia. Specifically, Razor alleges that three of its employees, all of whom reside in California, have pertinent information relating to the development, engineering, or technical aspects of Razor's products. Razor also asserts that two other California residents, the son of Razor's president and an outside consultant, were both involved in the design and development of the allegedly infringing product. The inconvenience to these witnesses, all of whom are either Razor's employees, related to Razor's employees, or Razor's paid consultants, merits little weight in the transfer analysis because Razor has failed to show that compulsory process is needed to obtain their testimony.

Razor also argues that it may need to take discovery from at least one other company that is located in California. According to Razor, in January 2008, plaintiffs entered into a settlement agreement with Friendly Toys Corporation ("Friendly Toys"). Pursuant to that agreement, plaintiffs granted a license to the patents in suit to Friendly Toys, and in return, Friendly Toys agreed to pay a royalty to plaintiffs for the life of the patents. Based on its status as a licensee, Razor contends that Friendly Toys is likely to have information relevant to damages issues in this case. Because it is unlikely that Friendly Toys will voluntarily travel to Virginia to testify on Razor's behalf, the need for compulsory process to obtain testimony from this non-party witness weighs in favor of transfer.

The final factor in the transfer analysis is the interest of justice. This factor "encompasses public interest factors aimed at systemic integrity and fairness." *Byerson v.*

*Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotation marks and citations omitted). The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments. *Id.* Fairness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law. *Id.* Here, the interest of justice factor weighs in favor of keeping the case in the Eastern District of Virginia. Kettler International is a local business and Virginia has an interest in providing a forum for its residents to litigate their disputes. Moreover, docket conditions, while not a significant factor, favor retaining this case because statistics reflect that this district, on average, provides a speedier trial.[9]

On balance, the relevant factors do not weigh strongly in favor of transfer. As an initial matter, plaintiffs' decision to file suit in the Eastern District of Virginia is entitled to substantial deference because this District is Kettler International's home forum. Moreover, while some documents and witnesses are located in California, other documents and witnesses are located in Virginia and Germany. Finally, there is nothing in the record to suggest that the interest of justice militates in favor of transfer. Thus, Razor has not satisfied its burden of proving that transfer is warranted in this case.

An appropriate Order has already issued.

Alexandria, Virginia
November 5, 2010

/s/ T. S. Ellis, III
United States District Judge

---

[9] Statistics for 2009 disclose that the median time for filing to trial of a civil matter in the Eastern District of Virginia was 10.2 months, whereas it was 19.0 months in the Central District of California. *See* Federal Court Management Statistics, Administrative Office of the United States Courts (2009).